UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-59-GWU

LONNIE TAYLOR, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Lonnie Taylor brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Taylor, a 44-year-old former store laborer, plumber, security guard, and house builder with a “marginal” education, suffered from impairments related to Crohn’s disease (status post surgery), osteoarthritis, anxiety and depression. (Tr. 14, 20). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 18, 20). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 20-21). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant’s summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Anne Thomas included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to ever crawl and climb ladders,

ropes or scaffolds; (2) an inability to more than occasionally climb ramps or stairs; (3) a need to avoid work at unprotected heights and around hazardous or moving machinery; (4) an inability to perform production rate or quota work; and (5) a limitation to simple, one-to-two step instructions with no more than occasional changes in job settings or routines. (Tr. 55-56). In response, Thomas identified a significant number of jobs which could still be performed. (Tr. 56). Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized Taylor's mental condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Jeffrey Ellington, an examining consultant, noted a diagnostic impression of Crohn's disease, arthritis, and chest pain. (Tr. 347). Dr. Ellington opined that Taylor would not be limited in such areas as lifting, carrying, standing, walking, sitting, climbing, balancing, stooping, crouching, kneeling, crawling, reaching, handling, feeling, pushing, pulling, seeing, hearing, or speaking. (Id.). Dr. Parandhamulu Saranga, a non-examining medical reviewer, opined that the plaintiff's physical problems were not "severe." (Tr. 514). The ALJ's findings were compatible with this opinion. Such treating and examining sources as the staff at Pineville Community Hospital (Tr. 191-236, 537-654), the staff at the Knox County Community Hospital (Tr. 348-388), the staff at the

Appalachian Regional Hospital (Tr. 389-403, 436-499), Dr. Barry Burchett (Tr. 404-410), and Dr. Talmadge Hays (Tr. 420-435, 515-532, 655-661) did not identify the existence of more severe physical restrictions than those found by the ALJ. These reports provide substantial evidence to support the administrative decision.

Leanne Mays, a physician's assistant at the office of Dr. Hays, noted extremely severe physical restrictions on an assessment form. Mays's limitations would restrict Taylor to less than a full range of sedentary level work. (Tr. 664-666). The ALJ rejected this opinion because he did not believe that the restrictions were consistent with the bulk of the medical record. (Tr. 19). The plaintiff asserts that this action by the ALJ was erroneous. Under the federal regulations, a physician's assistant is not an "acceptable medical source" whose opinion would be binding on the ALJ. 20 C.F.R. § 404.1513. The administrative decision was supported by the opinions of Dr. Ellington and Dr. Saranga. Therefore, the court finds no error.

The ALJ also dealt properly with the evidence of record relating to Taylor's mental condition. Psychologist Jeanne Bennett examined the plaintiff and diagnosed a depressive disorder, alcohol abuse in remission and polysubstance abuse in remission. (Tr. 416). Despite these mental problems, Bennett opined that the claimant would not be restricted in his ability to handle instructions toward the performance of simple, repetitive tasks, would be able to sustain attention and concentration towards the performance of simple, repetitive tasks, would be able to

respond appropriately to supervision, coworkers, and work pressures in a work setting, and could tolerate the pressures of daily work activities. (Tr. 417). The ALJ's findings were consistent with this opinion.

Dr. Kevin Eggerman also examined Taylor and diagnosed an anxiety disorder. (Tr. 342). Dr. Eggerman indicated that the plaintiff would have a "moderate" limitation in handling detailed instructions, a "mild to moderate" limitation in interacting with the public, supervisors and coworkers and responding appropriately to work pressures in a usual work setting and a "mild" limitation in responding appropriately to changes in work routine and making judgments on simple, work-related decisions. (Id.). The ALJ's findings were essentially consistent with these limitations.

Finally, Psychologist Ilze Sillers reviewed the record and opined that it did not reveal the existence of a "severe" mental impairment. (Tr. 500). Thus, this opinion also does not support the plaintiff's claim of total disability.

Taylor argues that the ALJ erred in evaluating his testimony regarding his pain and symptoms by not providing specific rationale for rejecting this testimony. However, the ALJ noted a number of reasons for this finding. With regard to the plaintiff's Crohn's disease, the ALJ noted that the medical evidence indicated that it was under good control with no inpatient treatment or surgical intervention subsequent to initial bowel surgery ten years earlier. (Tr. 19). The ALJ noted that

the claimant reported to Dr. Burchett experiencing diarrhea with a frequency of up to ten times a day, yet the treatment records revealed no such complaints. (Id.). While Taylor was noted to be thin, the ALJ observed that his weight appeared to have remained stable despite a problem with alcohol abuse which may have contributed to his gastric symptoms. (Id.). The ALJ indicated with regard to the plaintiff's musculoskeletal problems that his treatment had been conservative and his examinations and diagnostic studies largely unremarkable. (Id.). Physical or rehabilitative therapies were not utilized. (Id.). Finally, with regard to mental problems, Bennett found no psychological limitations. (Id.). Therefore, the court finds that the ALJ did note a number of reasons for rejecting the credibility of Taylor's testimony.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 17th day of November, 2010.

**Signed By:**

***G. Wix Unthank*** GWU

**United States Senior Judge**